61 F.3d 903
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jackie F. GOODSON, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 94-1710.
 United States Court of Appeals, Sixth Circuit.
 July 19, 1995.
 
 On Appeal from the United States District Court, for the Eastern District of Michigan, No. 93-72670; Lawrence P. Zatkoff, District Judge.
 E.D.Mich.
 REVERSED.
 Before: LIVELY, NELSON, and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Claimant Jackie Goodson challenges the district court's decision affirming the final decision of the Secretary of Health and Human Services denying Goodson's application for disability benefits on the basis that Goodson is able to perform a number of unskilled assembly, sorting and packaging jobs existing in sufficient numbers in the Detroit metropolitan area. For the reasons stated herein, we reverse and remand this case to the district court with instructions to award disability benefits to Goodson.
 
 I.
 
 2
 Goodson, born on August 3, 1989, and 54 years old at the time of the Secretary's final decision, had worked for years as a driver and supervisor for the Ford Motor Company. He did not complete high school, but received a GED. On May 22, 1989, Goodson was taken to the emergency room at Henry Ford Hospital, complaining of shortness of breath. He informed the physician that he smoked cigarettes for years. He also has a long history of alcohol abuse. A chest x-ray indicated a patchy infiltrate consistent with pneumonia. After treatment with an aerosol, Goodson was released from the hospital and told to stay away from exhaust and fumes.
 
 
 3
 On June 7, 1989, Dr. R. Truitt, Goodson's treating physician, examined Goodson and noted continued expiratory wheezing and rhonchi. Less than a month later, Goodson appeared at the emergency room. Truitt examined Goodson, finding diffuse rhonchi, wheezing, and decreased breath sounds. He concluded that Goodson was unable to work.
 
 
 4
 Truitt examined Goodson on July 17, 1989, and found that Goodson's lungs were clear of auscultation and percussion. He diagnosed Goodson's condition as chronic obstructive pulmonary disease. Truitt treated Goodson from August, 1989 through December 1990, with examinations indicating Goodson's lungs to be clear of auscultation and percussion. He indicated that Goodson was doing much better or seemed to be improving. On September 20, 1989, however, he concluded that Goodson was totally disabled unless he was able to work in a completely dust- and fume-free environment. A day later, Truitt noted in a questionnaire that Goodson was completely disabled.
 
 
 5
 Goodson filed an application for disability benefits on August 21, 1991, claiming that he was disabled as of May 19, 1989, due to emphysema and asthma. Dr. T. Petz, at the direction of Ford Motor Co., examined Goodson and determined that Goodson had "evidence of only minimally reversible, moderately severe obstructive pulmonary disease, consistent with emphysema." He noted "slight improvement" of Goodson's pulmonary functioning after the use of a bronchodilator.
 
 
 6
 Dr. M. Wood examined Goodson at the request of the Michigan Disability Determination Service. He diagnosed Goodson as suffering from bronchial asthma, chronic obstructive pulmonary disease, labile hypertension and ethanol abuse. Wood noted that Goodson's pulmonary function test results showed significant improvement after use of a bronchodilator, and were compatible with reversible lung disease.
 
 
 7
 Dr. Winkler then examined Goodson at the request of Goodson's attorney and concluded that Goodson was totally and permanently disabled from his previous occupation of driver and supervisor.
 
 
 8
 The Secretary denied Goodson's application for benefits initially and on reconsideration. The ALJ determined that Goodson suffered from severe chronic obstructive pulmonary disease, bronchi asthma, emphysema and hypertension. The ALJ also found that Goodson could not perform his past work as a driver and supervisor but had a residual functional capacity ("RFC") for light exertional work with no exposure to extreme temperatures and not more than minimal exposure to dust and fumes. Based on the testimony of a vocational expert and the grids, the ALJ then concluded that Goodson was not disabled, as Goodson could perform a number of unskilled assembly, sorting and packaging jobs existing in sufficient numbers in the Detroit metropolitan area.
 
 
 9
 Goodson appealed this decision to the district court. Upon consideration of a magistrate's report and recommendation, the district court affirmed the Secretary's denial of benefits.
 
 II.
 
 10
 This court will uphold the Secretary's decision to deny benefits if supported by substantial evidence. Bogle v. Sullivan, 998 F.2d 342, 346 (6th Cir.1993). That is, if substantial evidence supports the determination, we will affirm even if substantial evidence also supports the opposite conclusion. Bradley v. Secretary of Health & Human Servs., 862 F.2d 1224, 1228 (6th Cir.1988). This circuit defines the term substantial evidence as " 'more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Bogle, 998 F.2d at 346-47. Further, in making this determination, we will not assess credibility nor weigh the evidence. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984).
 
 
 11
 The ALJ asked the vocational expert ("VE") the following question:
 
 
 12
 If I were to find that the claimant were capable of performing light work as that is defined by the Secretary, but that he could not perform work in the presence of more than a low to moderate amount of fumes, could not be exposed to extremes in temperature. Under these circumstances could he return to his past work?
 
 
 13
 The VE responded "no." The ALJ then asked whether Goodson under these same limitations could perform any work, and the VE stated that Goodson could work in the areas of sorting, packaging or simple assembly. The VE noted that approximately 8,000 jobs existed in these fields in the Detroit area. At the completion of the hearing, however, the ALJ stated as a finding of fact that Goodson could not withstand more than "minimal exposure to dust and fumes." (emphasis added). Goodson contends that the ALJ's hypothetical to the VE was fatally flawed as the question included the words "low to moderate" rather than "minimal" and failed to include a limitation as to dust.
 
 
 14
 We agree. We, unlike the Secretary, find that the terms "moderate" and "minimal" are neither synonymous nor interchangeable. Likewise, fumes are not synonymous with dust. Given that the record does not reflect that the VE was aware of these additional limitations when testifying, we find that the ALJ's hypothetical regarding Goodson's ability to perform other work, which was necessary for the ALJ's decision, was fatally flawed.
 
 
 15
 Goodson also takes issue with the ALJ's conclusion that Goodson has the ability to perform some light work given his restrictions regarding extreme temperatures, fumes, and dust. The regulations define "light work" as the following:
 
 
 16
 Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.
 
 
 17
 20 C.F.R. Sec. 404.1567(b). Goodson claims that the ALJ's conclusion is unsupported, as "there is not substantial evidence on this record for more than a capacity for a limited range of sedentary work."
 
 
 18
 We agree. The record simply does not contain evidence regarding Goodson's ability to lift twenty pounds infrequently or ten pounds frequently, or stand and walk for an extended period of time. Contrary to the Secretary's position, the medical reports of Drs. Petz, Winkler, and Wood do not support an RFC of "light work," as these reports only address Goodson's pulmonary problems, not his physical abilities or limitations. Moreover, the VE's testimony does not cure the error. The ALJ asked the VE whether, assuming an RFC of limited light work, sufficient jobs existed in the economy. The VE did not testify about whether "light work" is the proper RFC for Goodson. As there is a complete lack of evidence on this element, we find the Secretary's decision is not supported by substantial evidence.
 
 
 19
 We, therefore, REVERSE and REMAND this case to the district court with instructions to award plaintiff disability benefits.